# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**MELVIN SMITH and STAN FOWLER,**

   **Plaintiffs,[1]**

**v.**                                                        **No. 15-cv-1153 SMV/GBW**

**AUTO-OWNERS INSURANCE COMPANY,**

   **Defendant.**

## MEMORANDUM OPINION AND ORDER

   THIS MATTER is before the Court on Defendant Auto-Owners Insurance Company's Motion to Exclude Plaintiff's Economic Expert, Dr. Stan Smith [Doc. 97], filed on February 13, 2017.  Briefing is complete,[2] [Docs. 107, 115], and oral argument was held on June 19, 2017. The Court finds that Dr. Smith's opinion is relevant and reliable.  Defendant's concerns about the accuracy of Dr. Smith's factual presumptions (e.g., that Plaintiff is completely unable to perform any of his past work or the particular percentage of alleged loss of ability to perform housekeeping services) go to the weight rather that the admissibility of the testimony. Defendant's motion will be denied, except as to one point.  Although Dr. Smith may offer testimony about hedonic damages in general, he may not offer an opinion on the quantification of such damages.

## Background

   Plaintiff Melvin Smith was traveling in an automobile insured by Defendant Auto-Owners' Insurance Company ("AOI") when it was struck from behind by a vehicle driven

---

[1] Judgment was entered in favor of Plaintiff Stan Fowler on November 2, 2016, after he accepted Defendant's offer of judgment.  [Doc. 84].  Melvin Smith is the sole remaining Plaintiff in this case.
[2] The Court will grant Plaintiff's opposed motion to accept his untimely response.  *See* [Docs. 112, 121].

by a State Farm insured.  State Farm's driver was at fault for the accident.  State Farm adjusted the claim and ultimately contributed its $100,000 policy limits to satisfy the claims of the various injured parties, including Plaintiff.  As a result of the accident, Plaintiff received a payment of $26,731.10 from State Farm and an additional $5,000 medical bill payment from Defendant. Plaintiff contends, however, that his damages exceed the combined amounts he received from State Farm and Defendant and that he is entitled to additional benefits under the underinsured motorist policy with Defendant.  Plaintiff initiated this lawsuit, claiming, among other things, that Defendant's failure to pay him the additional benefits constitutes a breach of the insurance contract.[3]  [Doc. 1-1].

## Analysis

Defendant moves to exclude the testimony of Plaintiff's expert economist, Dr. Smith. [Doc. 97].  Defendant does not challenge Dr. Smith's qualifications or his methodology.  Instead, Defendant urges that some of Dr. Smith's factual presumptions are inaccurate or unsupported. For example, Defendant strenuously challenges Dr. Smith's presumptions that Plaintiff cannot return to work and has a 50% loss of ability to perform housekeeping.  Defendant is free to cast doubt on these presumptions through cross examination and presentation of contrary evidence. However, Defendant's concerns about Dr. Smith's factual presumptions go to the weight of the testimony rather than its admissibility.  Further, the Court will allow Dr. Smith to opine about the

---

[3] In Plaintiff's Complaint for Breach of Underinsured Motorist Insurance Contract and Torts, he asserts four counts: (I) Breach of Contract, (II) Punitive Damages under the Contract, (III) Complaint for Bad Faith, Misrepresentation, and Fraud, and (IV) Declaratory Judgment.  [Doc. 1-1] at 1–28.  The Honorable Gregory B. Wormuth has bifurcated discovery into two phases.  "Phase 1 . . . address[es] Plaintiff's contractual claims, and Phase 2 . . . address[es] Plaintiff's extra-contractual claims."  [Doc. 33] at 1.  Phase 1 discovery concluded on December 9, 2016.  [Doc. 82].

value of Plaintiff's alleged loss of earning capacity.  Lastly, although Dr. Smith may testify about hedonic damages in general, he may not give an opinion about the value (i.e., a specific dollar amount or even a range) of such damages.

### Dr. Smith may testify regarding the value of Plaintiff's alleged loss of earning capacity.

In demonstrating that an expert's testimony is reliable, a "plaintiff need not prove that the expert is undisputably correct or that the expert's theory is generally accepted in the scientific community." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004) (internal quotation marks omitted).  "Instead, [a] plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Id.*

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of this case.

Fed. R. Evid. 702.  Accordingly, before admitting expert testimony, the district court should ensure that the testimony (1) has "a reliable basis in the knowledge and experience of [the

expert's] discipline," and (2) is "relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592, 597 (1993); *see United States v. Chapman*, 839 F.3d 1232, 1238 (10th Cir. 2016) (same).

Here, Plaintiff has identified Stan Smith, Ph.D., as his expert economist. Dr. Smith opined that Plaintiff's loss of future earning capacity is valued at $420,739. [Doc. 97-5] at 1. Dr. Smith further opined that the value of Plaintiff's lost ability to perform housekeeping and household management is $172,625. [Doc. 97-6] at 2. Finally, Dr. Smith gave a value range for Plaintiff's alleged hedonic damages, the average of which is $843,763. [Doc. 97-7] at 2.

Dr. Smith has extensive education and experience in economics, including a Ph.D. from the University of Chicago, more than 40 years' experience in the field, and numerous publications. [Doc. 97-4] at 1–2. He has provided expert testimony in hundreds of cases over the past five years. [Doc. 97-9] at 20–40. His report explains in detail his methodology for estimating Plaintiff's losses. [Doc. 97-4] at 3–23. Generally, though, he looked at past wage growth, interest rates, consumer prices, and studies regarding the value of life. *Id.* at 3.

Defendant does not challenge Dr. Smith's qualification to testify as an expert in economics. [Doc. 97] at 8. Nor does Defendant dispute the methodology, i.e. references to past wage growth, interest rates, consumer prices or his calculations, employed by Dr. Smith in reaching his opinions. *Id.* at 8–9. Instead, Defendant disputes the facts on which Dr. Smith's opinion relies. *Id.*

Defendant argues that Dr. Smith's opinions are based on inaccuracies and fabrications, and therefore, his opinions are unreliable and should be excluded. *Id.* at 8–12. Defendant asserts

4

that Dr. Smith made inaccurate assumptions about Plaintiff because Dr. Smith never spoke with Plaintiff.[4]  *Id.* at 9.  (Instead, Dr. Smith had a subordinate economist speak with Plaintiff. [Doc. 107-1] at 2.)  Defendant further speculates that Dr. Smith made inaccurate assumptions about Plaintiff because Dr. Smith's expert testimony schedule may have been too rigorous to conduct a "serious review" of the case.  [Doc. 97] at 8, 9.  Specifically, Defendant highlights three examples that it believes show that Dr. Smith's opinions are based on "fictitious facts."  *Id.* at 9.

First, Defendant complains that Dr. Smith took into account Plaintiff's (unpaid) work as a recreational vehicle service technician but not his (also unpaid) work selling used cars.  *Id.* at 10.  Defendant points out that Dr. Smith never opined "(1) whether Plaintiff Smith suffered a total loss of earning capacity as a used car salesman, (2) the proportion of Plaintiff Smith's wages and earning capacity related to used car sales, and (3) Plaintiff Smith's abilities to earn future income as a used car salesman."  [Doc. 115] at 8.  Defendant argues that Dr. Smith's failure to address Plaintiff's earning capacity as a used car salesman renders his opinion "useless." *Id.* at 7−8.

Second, Defendant argues that Dr. Smith inappropriately relied upon Plaintiff's representation that he could not work after the accident.  Defendant argues that this representation must be false because (1) Plaintiff was the only employee at Principal Mobility, and (2) Principal Mobility's tax returns show significant gross sales—more than $660,000—in the 18 months after the accident.  *Id.* at 10–11.  The argument is that Plaintiff must have

---

[4] There is no requirement that Dr. Smith have spoken directly with Plaintiff before testifying as an economics expert in this case.  *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."); *Daubert*, 509 U.S. at 592 ("Unlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." (internal citations omitted) (citing Fed. R. Evid 701, 702, 703)).

"worked" in order for the company to have generated these gross sales. Plaintiff responds that the company's expenses were equal to or greater than the gross sales. [Doc. 107] at 11. Plaintiff also appears to explain that the gross sales generated by the business occurred because there was a second employee, Leon Walter. Plaintiff argues that it was Mr. Walter's work—not Plaintiff's—that generated the gross sales. *Id.* at 5–6 (citing Walter Aff. [Doc. 107-3] at 2, 3). Defendant disputes this. It argues that there is nothing in the record showing that "Mr. Walter [was] responsible for Principal Mobility's gross sales reflected in [its tax returns after 2012]." [Doc. 115] at 6. Defendant points to Mr. Walter's deposition testimony that Plaintiff "brought the handicap work of his past customers to me. . . . [Plaintiff] brought it to me, and it was my ball game at that point. . . . [I]t was me doing the work, and me getting paid for it." *Id.* (quoting Walter Aff. [Doc. 107-3] at 2–3 (deposition pages 6:12–13, 7:5–6, 14–15)).

Third, Defendant argues that Dr. Smith's opinions lack factual support because Plaintiff never intended to return to remunerative work, irrespective of the accident. Plaintiff testified at his deposition that he stopped taking any salary or payment for his work about ten years prior to the accident.[5] He testified that if the accident had not occurred, he would have either continued his unpaid work at Principal Mobility or he would have retired and focused on his hobby of restoring classic cars. [Doc. 97] at 11–12 (citing Pl. depo. [Doc. 97-2] at 1 (48:2–13), 2 (53:4−9), 4–5 (107:19–108:5)). Plaintiff responds that the actual amount Plaintiff received for

---

[5] Plaintiff explained that he stopped taking any pay because he began receiving benefits from the Social Security Administration. Plaintiff explained that he could only have so much income while drawing the benefits. In order to keep his benefits, he elected to take no pay for his efforts at Principal Mobility. [Doc. 97] at 11–12 (citing Pl. depo. [Doc. 97-2] at 1 (48:2–13), 2 (53:4–9), 4–5 (107:19–108:5)).

his work is beside the point.  Instead, Plaintiff argues that what matters is the value of the work that he can no longer do as a result of the accident.  [Doc. 107] at 9.

Defendant's argument—that Dr. Smith's opinions are unreliable because they are based on inaccuracies and fabrications—is not governed by *Daubert*.  "By its terms, the *Daubert* opinion applies only to the qualifications of an expert and the methodology or reasoning used to render an expert opinion.  *Daubert* generally does not, however, regulate the underlying facts or data that an expert relies on when forming [his] opinion."  *United States v. Lauder*, 409 F.3d 1254, 1264 (10th Cir. 2005).

Rather, when assessing the sufficiency of the facts on which the opinion is based, the trial court should conduct "a quantitative rather than qualitative analysis."  Fed. R. Evid. 702 Advisory Committee Note to 2000 Amendments.  "In other words, the Court does not examine whether the facts obtained by the witness are themselves reliable—whether the facts used are qualitatively reliable is a question of the *weight* to be given the opinion by the factfinder, not the *admissibility* of the opinion."  *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1223 (D. Colo. 2008) (emphases added); *see, e.g., Quinton v. Farmland Indus., Inc.*, 928 F.2d 335, 337–38 (10th Cir. 1991) (though doctor's factual knowledge was not "as complete as it might have been[,]" it was "sufficiently detailed . . . to permit his expression of an opinion as to the cause of the damages allegedly incurred").  Accordingly, the trial court should limit its inquiry to "whether the witness obtained the amount of data that the methodology itself demands."  *Crabbe*, 556 F. Supp. 2d at 1223.  "Vigorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596.

Dr. Smith's opinions are relevant and reliable, and they should not be excluded based on the arguments presented by Defendant. Defendant's concerns go to the weight of the evidence, not its admissibility. *See Ramsey v. Culpepper*, 738 F.2d 1092, 1101 (10th Cir. 1984) (the underlying validity of an economist's factual assumptions goes to the weight, and not the admissibility, of the evidence); *United States v. Cavely*, 318 F.3d 987, 997–98 (10th Cir. 2003) (concluding that, if methodology and reliability of expert testimony was established, questions underlying its validity went to the weight of the evidence, not its admissibility); *see also* Charles Alan Wright et al., 29 Fed. Prac. & Proc. Evid. § 6262 (2d ed. 2016) ("Assuming the expert testimony has the earmarks of reliability, the evidence is then admitted and subjected to the kind of adversarial attack that facilitates the jury's central functions of deciding what weight to attribute to evidence and which witnesses to believe."). Defendant is free to cast doubt on Dr. Smith's opinions through vigorous cross examination, rebuttal expert testimony, and presentation of contrary evidence.

### Dr. Smith may testify regarding the value of Plaintiff's alleged loss of ability to perform household services.

Dr. Smith estimated the loss of the value of Plaintiff's ability to perform housekeeping chores and manage his home at $172,625. [Doc. 97-6] at 2. Dr. Smith arrived at this number by first assuming a 50% loss in Plaintiff's ability to perform housekeeping and household management chores. Based on that assumed 50% loss, Dr. Smith referenced numerous tables and surveys and performed various calculations. *Id.* at 1–2. Defendant does not take issue with

Dr. Smith's calculations or the sources he referenced. Instead, Defendant takes issue with the assumption that Plaintiff suffered a 50% loss of his ability to perform household services. [Doc. 97] at 12. Defendant argues that "Dr. Smith failed to provide any information whatsoever to support his conclusion that Plaintiff Smith's loss of household services is supposedly '50 percent.'"[6] *Id.* Defendant further argues that Dr. Smith, as an economist, is not qualified to give an expert opinion on the percentage of loss of household services. [Doc. 115] at 11. Therefore, Defendant concludes that Dr. Smith's opinion lacks sufficient basis in fact and should be excluded. *Id.*

The Court is not persuaded by Defendant's position. Dr. Smith never opines that Plaintiff actually suffered a 50% loss of ability to perform household services. Dr. Smith offers no opinion one way or the other as to whether Plaintiff actually suffered a loss of household services. Dr. Smith is an economist; he is not a physician or vocational expert. As an economist, Dr. Smith's opinion is that *if* Plaintiff suffered a 50% loss of ability to perform household services, the monetary value of such loss would be $172,625. Dr. Smith's opinions are about the monetary value of the losses Plaintiff asserts. Plaintiff still has the burden to prove at trial that he, in fact, suffered the losses. Dr. Smith's opinions on the monetary values of Plaintiff's alleged losses are relevant and reliable.

---

[6] Plaintiff responds with an affidavit from Dr. Smith, explaining that he relied on Plaintiff's own assessment of his loss of household services for the assumed percentage of loss. [Doc. 107-1] at 2. "The 50 percent figure was exactly the figure provided by Mr. Melvin Smith's statement of facts made to [one of my subordinate economists] regarding his losses from the accident in question." *Id.*

**Dr. Smith may testify about hedonic damages in general,
but he may not offer an opinion as to the specific value of such damages.**

Defendant argues that Dr. Smith's opinion regarding the value of Plaintiff's hedonic damages should be excluded. [Doc. 115] at 12; [Doc. 97] at 12–14. On this point, the Court agrees with Defendant. Dr. Smith will not be allowed to give an opinion on the dollar amount of Plaintiff's alleged loss of value of life. *See Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1245–46 (10th Cir. 2000).

New Mexico allows an injured party to recover hedonic damages. UJI 13-1807A NMRA. The concept of hedonic damages is premised on "the rather noncontroversial assumption that the value of an individual's life exceeds the sum of that individual's economic productivity." *Smith*, 214 F.3d at 1244 (10th Cir. 2000). The Tenth Circuit and numerous cases from this District have excluded expert testimony on hedonic damages from an economist who attempts to testify to a specific dollar figure, benchmark figures, or a range of values to be used in calculating such damages, but have allowed testimony about the concept of hedonic damages and the broad areas of human experience the factfinder should consider in determining those damages. *Id.* at 1245–46; *Kretek v. Bd. of Comm'rs of Luna Cty.*, No. 11-cv-0676 KG/GBW, 2014 U.S. Dist. LEXIS 188299, at *4 (D.N.M. Feb. 26, 2014) (unpublished); *Flowers v. Lea Power Partners, LLC*, No. 09-cv-0569 JAP/SMV, 2012 WL 1795081, at *4 (D.N.M. Apr. 2, 2012) (unpublished); *BNSF Ry. Co. v. LaFarge Sw., Inc.*, No. 06-cv-1076 MCA/LFG, 2009 WL 4279849, at *1 (D.N.M. Feb. 9, 2009) (unpublished). I will follow this well-established law and will allow Dr. Smith to testify about the concept of hedonic damages and the general method for calculating them within the parameters set out in the cases. However, he will not be allowed to

10

testify as to any certain dollar amount quantifying the alleged hedonic losses. *See Smith*, 214 F.3d at 1245–46.

<u>Conclusion</u>

Dr. Smith's opinion is relevant and reliable. Defendant's concerns about the accuracy of Dr. Smith's factual presumptions go to the weight—not the admissibility—of his opinions. Defendant's motion will be denied, except as to one point. Although Dr. Smith will be allowed to offer testimony about hedonic damages in general, he may not offer an opinion on the specific value of such damages.

**IT IS ORDERED, ADJUDGED, AND DECREED** that Defendant Auto-Owners Insurance Company's Motion to Exclude Plaintiff's Economic Expert, Dr. Stan Smith [Doc. 97] is **GRANTED IN PART and DENIED IN PART**.

**IT IS SO ORDERED**.

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**